437 A.2d 988

**COMMONWEALTH of Pennsylvania,**

v.

**Matthew SELTZER, Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 1981.

Filed Nov. 30, 1981.

Mary McNeill Greenwell, Philadelphia, for appellant.

Diane M. Devlin, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before MONTEMURO, HOFFMAN and VAN der VOORT, JJ.

MONTEMURO, Judge:

This is an appeal from a Judgment of Sentence by the court below, sitting without a jury, for the crimes of possession[1], possession with intent to deliver[2], and delivery[3] of various controlled substances in violation of the Controlled Substance, Drug, Device and Cosmetic Act.[4] Appellant raises myraid contentions of error on appeal; however, for the reasons outlined below, we agree with appellant's contention that his trial counsel was ineffective. Therefore, we reverse and remand for a new trial on that basis without reaching appellant's other issues on the merits.[5]

The facts of the case are as follows: [6]

On April 10, 1979, one Detective Joseph Fehn of the Bristol Township Police Department was engaged in conducting a drug investigation together with officers of his and other police departments. He was the only witness for the Commonwealth at both the suppression hearing and the trial.[7] He testified that on the aforesaid date Officer Linda Cielinski was operating in an undercover capacity and had apparently made contact with one David DeWitt and arranged the purchase of one ounce of methamphetamine hydrochloride for approximately $1,300.00. He also testified

1. 35 Pa.S.A., § 780–113(a)(30).

2. 35 Pa.S.A., § 780–113(a)(30).

3. 35 Pa.S.A., § 780–113(a)(30).

4. 35 Pa.S.A., § 780–101, et seq.

5. This is not to say that we have not thoroughly reviewed appellant's many other contentions of reversible error. Indeed, we have reviewed at length the briefs for both sides *and* the record in this case; and, while we need not reach a decision on appellant's other arguments, we do note that counsel for appellant at the new trial would be well-advised to carefully consider these other arguments.

6. Many of these facts were adduced at an extensive pre-trial hearing and were incorporated by reference at trial.

7. The fact that no one else testified *in and of itself* speaks to a hearsay problem in the case below—and one not handled properly by trial counsel. See discussion *infra*.

that Cielinski had secured $1,300.00 from a special Bristol Township police fund and that the serial numbers on the various bills were duly recorded and retained by the police department.[8] At or about 7:00 o'clock P.M. that evening Cielinski met DeWitt at a lounge; at all relevant times Cielinski and DeWitt were under surveillance by Detective Fehn and other officers. After meeting DeWitt at the lounge, Cielinski and DeWitt proceeded in Cielinski's automobile to Ravine Lane in Bristol Township and parked on the street immediately opposite 44 Ravine Lane—home of the appellant. Detective Fehn followed them to that location and continued past the spot where they had parked their motor vehicle; he parked in a driveway several houses down the street so that he could observe Cielinski's car, its occupants, and 44 Ravine Lane.

After Cielinski and DeWitt arrived at the aforedescribed location DeWitt exited the vehicle, leaving Cielinski in it, and entered the premises at 44 Ravine Lane. He remained inside approximately 10 or 15 minutes, then exited that residence and re-entered Cielinski's automobile. At that time he apparently delivered to Cielinski a clear plastic bag containing a white powder. Cielinski then allegedly gave him the sum of $1,150.00 of the recorded currency; DeWitt then left the motor vehicle and re-entered 44 Ravine Lane. Fehn then approached the Cielinski vehicle, spoke to Cielinski and was allegedly advised by her that she had received the clear plastic bag with the white powder and had given DeWitt the money.[9] Fehn then took the clear plastic bag with the white powder, returned to his own motor vehicle and conducted a field test there and determined that the white powder was methaphetamine hydrochloride. DeWitt then exited 44 Ravine Lane and was arrested at that time. A search of his person revealed that he had none of the money; he purportedly stated at that time to the officers

8. Here is a valid ground for objection not taken advantage of below—with no apparent reason. See discussion *infra*.

9. Again, objectionable hearsay not challenged by counsel.

that he had made the purchase in 44 Ravine Lane from the appellant.[10]

Detective Fehn and various other officers then proceeded to the side door of the house leading from the driveway and the carport and knocked thereon. This was the door they had observed DeWitt enter and leave both times he had entered the house. Fehn testified that he knocked upon the door and immediately the door was opened by a young woman. Fehn identified himself and his companions as police officers and advised the young woman that he was there to conduct a drug investigation. The young lady identified herself as Terry Seltzer and stated that she was the owner of the premises. The officers then entered the premises and found a number of people in the room they entered (the kitchen) and others in the living room immediately adjacent thereto. They were all instructed to remain where they were while Fehn and several other officers proceeded to the second floor. On the second floor they proceeded to a door off of a hallway and found that it was locked. Fehn kicked the door down and entered that room, finding therein the appellant, together with two other parties. In the room Fehn observed a gram scale and a white powder upon a mirror. Each person in the room was asked to identify himself, which each did, and the appellant stated that he was the owner of the premises. The appellant was placed under arrest and each of the three occupants was taken to the first floor where the other persons were. The court below found that the house was not searched nor was anything seized at that time.

Fehn then departed the house, leaving other officers there, and proceeded to the office of the District Justice of the Peace where he duly executed and swore to a certain affidavit for the purpose of securing a search warrant. A search warrant was issued and Fehn returned immediately to the house where a search was conducted. A number of items were found and seized as a result of that search including the drugs in question consisting of a quantity of

10. Again, objectionable hearsay not challenged by counsel.

methamphetamine hydrochloride, a quantity of LSD, some marijuana and hashish. In addition, a sum of money of approximately $5,100.00 was found. The marked money was likewise allegedly found.

Later, based almost entirely on the testimony of Detective Fehn (and Fehn *alone*), and following various procedural events about which appellant also complains,[11] appellant was found guilty of the aforementioned crimes on October 4, 1979, by the Honorable Isaac S. Garb of the Court of Common Pleas of Bucks County. Following appropriate post-verdict motions, appellant was sentenced to serve six (6) to twelve (12) months in Bucks County prison.[12] On July 11, 1980, this appeal followed.

On appeal, appellant makes extensive allegations of ineffectiveness of counsel both before and during the trial below. Due to the nature and extent of the instances of ineffectiveness during the trial itself, however, we need not discuss the other allegations of ineffectiveness,[13] since we find that there *was* sufficient ineffectiveness on that occasion to justify the granting of a new trial.

In appellant's brief, we are asked to review *all* the notes of testimony; having done so, we are forced to agree that trial counsel did, in fact, repeatedly allow the Commonwealth to present inadmissible and prejudicial hearsay testimony without objection. Indeed, the fact that Detective Fehn was virtually the only witness for the Commonwealth in this case makes obvious the fact that hearsay by Fehn was necessary in order to prove much of the case against appellant.

**11.** See Footnote 5, *supra.*

**12.** Although the point is not raised by appellant, we do note that the court below did not put the *reason* for this sentence on the record—something which is required and which we would very much like to have in this case.

**13.** Again, however, we would suggest that counsel review these other contentions carefully prior to the new trial. See Footnote 5, *supra.*

Specifically, appellant complains (directly or by fair impli-
cation) of the following: that Fehn was permitted to testify
as to the initial contact between Cielinski and DeWitt *when
he was not present*; that Fehn was also permitted to testify
as to *Cielinski's* acquisition and use of marked money for the
drug transaction, when he also was not directly privy to this
part of the "set-up" (and further that trial counsel failed to
force the Commonwealth to substantiate anything concern-
ing this marked money, despite the fact that its alleged
presence in appellant's house was a crucial part of the
Commonwealth's case);[14] that Fehn was allowed to testify
as to the alleged exchange of drugs and money *between
Cielinski and DeWitt*;[15] and most importantly, in light of
the conviction for *delivery*, that Fehn was permitted to
testify that DeWitt had told *Cielinski* that appellant had
sold him the drugs.[16]

In addition to the above testimony by Fehn as to matters
involving the observations of others and *not* himself, appel-
lant complains of several other instances of ineffectiveness.
For instance, appellant complains that counsel failed to
object when Fehn, rather than the lab technician, was
allowed to testify as to the final and detailed chemical
analyses of the drugs allegedly found at appellant's home.
This may seem a minor point, but it is well taken. Also,
appellant contends, and we think rightfully so, that counsel
should have objected when the Commonwealth introduced
into evidence a book, seized at appellant's home, called *The
Whole Drug Manufacturer's Catalogue*; appellant complains
further at the failure to object when Fehn was permitted to
actually read passages from and summarize the book. The
essence of this complaint is that appellant was made to look
like a "major drug dealer and/or manufacturer" and that, of
course, the prejudice therefrom far outweighed any proba-
tive value. Our examination of the record shows that, in

14. See Footnote 8 and accompanying text, *supra.*

15. See Footnote 9 and accompanying text, *supra.*

16. See Footnote 10 and accompanying text, *supra.*

this instance at least, counsel did try to discredit this part of the testimony on cross-examination; nevertheless it would appear that an objection at the start would have been far preferable.

Leaving aside any argument concerning the aforementioned book, not to mention appellant's allegations concerning damaging admissions (and even questions) by his counsel below, a review of the record reveals that all of the aforementioned testimony did, in fact, occur *without proper objections* by counsel. Particularly when viewed as a whole, we can find "no reasonable basis" for counsel's action—or lack of it—regarding the various instances of prejudicial and damaging hearsay testimony. See *Com. ex rel Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Not only can we find no reasonable basis; indeed none is offered by the Commonwealth on these many points of alleged error. The primary response of the Commonwealth here is that the evidence was properly admitted; no "mockery of justice" (an incorrect standard) [17] occurred even if admission should have been challenged; and trial counsel "had previously served as an Assistant District Attorney who had wide experience at the Bar prior to his taking the representation of appellant." While this latter allegation may, in fact, be the case, it is *not* a reason for us to find that appellant was given effective assistance of counsel in light of the glaring errors in failing to object to so much hearsay.

Of course, the Commonwealth does make, at least implicitly, some specific points regarding these ineffectiveness claims of appellant. For one, it is contended that the hearsay employed at the suppression hearing was, in fact, admissible in order to show *probable cause* (i.e. not offered for the truth of the matter asserted); hence, counsel was not ineffective since any objection at that point would have been overruled. The Commonwealth is, of course, correct on this point, thus rendering irrelevant any argument as to whether

17. This has not been the standard in our Commonwealth since at least 1967. See *Com. ex rel Washington v. Maroney, supra.*

or not appellant has waived his right to complain of ineffective assistance at the suppression hearing. Another point we address is that admission of the hearsay complained of by appellant was "harmless error" even if it should have been objected to. This we must flatly reject; as we have previously noted,[18] the Commonwealth's case against appellant rested in large part on the very hearsay testimony not objected to. See, e.g., *Com. v. Story*, 476 Pa. 391, 409, 383 A.2d 155, 164 (1978) (reasonable possibility that an error contributed to conviction—error *not* harmless).

Although it is true that appellant cannot successfully complain about the failure of counsel to object to the various hearsay *at the suppression hearing*, it is also true that virtually all of the objectionable testimony was repeated at trial—again without proper objection. Herein lies the ineffectiveness upon which we must reverse.[19] It may be argued that by permitting the incorporation of suppression evidence into trial (and concomitant use of the same judge for trial), counsel's failure to object at trial was also irrelevant. The fact of the matter is that it would be completely unreasonable to assume that counsel, by failing to object, was stipulating to the inclusion of inadmissible hearsay when the incorporation was made. And even assuming arguendo that counsel intended to make such an inappropriate stipulation, it would be grossly unfair to appellant to excuse, on appeal, counsel's ineffectiveness at trial based on his ineffectiveness just *prior to* trial.[20] This would be overly technical and could even lead to a charge of appellate ineffectiveness, since appellate counsel treated this ineffectiveness thoroughly, but in general terms, and did not specif-

18. See Footnote 7 and accompanying text, *supra*.

19. We would also note that counsel failed to object to the incorporation of suppression hearing evidence into trial and to the use of the same judge for both proceedings; however, appellate counsel has ignored this area of ineffectiveness and therefore we may not raise it sua sponte. See discussion and Footnote 21, *infra*.

20. See Footnote 19, *supra*.

ically challenge counsel's failure to object to the incorporation.[21]

Since we find *no* reasonable basis for failing to object to the hearsay, we conclude that counsel was ineffective and appellant was denied his right to effective representation; and we see *no* reason to remand simply for an evidentiary hearing on the ineffectiveness. Instead, the Judgment of Sentence by the court below is hereby reversed and the case is remanded for a new trial.

---

**21.** See Footnote 19, *supra.* We would further note that we have found but one case which even comes close to any guidance in this area. *Com. v. Corbin*, 447 Pa. 463, 291 A.2d 307 (1972). In that case, the specific point challenged (one left untouched in the instant appeal) was the use of the same judge for suppression hearing and trial. While the factual predicates and issues in *Corbin* are not even close to those in this case, we do note that the *reasoning* for finding harmless error in *Corbin* was that "the potential error of the same judge sitting at trial is harmless, *because the same evidence he may have been exposed to for suppression purposes is admissible to show guilt or innocence.*" Id., 447 Pa. at 468, 291 A.2d 307 (emphasis supplied). Clearly, we may infer from the wisdom of *Corbin* that it does matter in the instant case that the inadmissible hearsay went *directly* to the issue of guilt or innocence and should, therefore, have been objected to most strenuously.