J-S76021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| OMAR COPELAND | |
| Appellant | No. 2244 EDA 2016 |

Appeal from the Judgment of Sentence imposed June 10, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-013639-2013

BEFORE:  PANELLA, STABILE, and PLATT,* JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 17, 2018**

Appellant, Omar Copeland, appeals from his judgment of sentence in the Philadelphia Court of Common Pleas of 1-2 years' imprisonment for persons not to possess firearms.[1]  Appellant argues that the trial court erred in denying his pretrial motion to suppress and motion to dismiss his case under Pa.R.Crim.P. 600.  We affirm.

On September 3, 2013, Appellant was arrested and charged with several weapons offenses.  Through counsel, Appellant filed a motion to suppress the evidence relating to his arrest, including the seizure of a gun that he discarded while fleeing from Philadelphia Police Officer McAllister.  On May 16, 2014, the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105.

suppression court denied Appellant's motion to suppress after a hearing. Subsequently, Appellant waived his right to counsel and demanded a jury trial (which he had previously waived). In April 2016, after multiple continuances, the case proceeded to a jury trial on all charges except persons not to possess firearms, for which the trial court ordered a separate trial. On April 12, 2016, the court entered a mistrial when the jury failed to reach a verdict. Trial immediately began on the charge of persons not to possess firearms. The parties stipulated that Appellant's prior criminal convictions prohibited him from possessing a gun. The jury found Appellant guilty of this charge.

On June 10, 2016, the trial court imposed the sentence of 1-2 years' imprisonment. On June 16, 2016, the Commonwealth filed a motion for reconsideration of sentence alleging that the trial court deviated from the Sentencing Guidelines. On July 1, 2016, Appellant filed a notice of appeal. On September 13, 2016, the trial court denied the Commonwealth's motion for reconsideration. The Commonwealth did not appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[2]

---

[2] Technically, Appellant's appeal was premature, because he filed his notice of appeal while the Commonwealth's motion for reconsideration awaited a decision. **See** Pa.R.Crim.P. 720(A)(4). Nevertheless, we will treat Appellant's appeal as timely under Pa.R.A.P. 905(a)(5), which prescribes: "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."

Appellant, who continues to represent himself *pro se*, failed to include a Statement of Questions Presented in his brief on appeal. Nevertheless, based on his argument section, we discern that his brief includes three issues: (1) whether the trial court erred in denying Appellant's motion to suppress; (2) whether the trial court erred in overruling Appellant's objection to the testimony of Officer Morales, the first officer to encounter Appellant on the evening of his arrest; and (3) whether the trial court erred in denying Appellant's pretrial motion to dismiss the charges under Rule 600.

We first address whether the trial court properly denied Appellant's motion to suppress. Our standard of review for the denial of a suppression motion is well established:

> [The] standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing such a ruling by the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if legal conclusions drawn therefrom are in error.

***Commonwealth v. Bush***, 166 A.3d 1278, 1282 (Pa. Super. 2017). Our scope of review in suppression matters is limited to the suppression hearing record, and excludes any evidence elicited at trial. ***In re L.J.***, 79 A.3d 1073, 1085 (Pa. 2013).

The trial court summarized the evidence adduced during the suppression hearing as follows:

On direct examination, Officer Morales of the Philadelphia Police . . . testified that he responded to a "person with a gun" call while on duty in the area of 412 Saunders Avenue around 10:30 p.m. on September 3, 2013. The Commonwealth questioned Officer Morales on what brought him to that location. After referring to his notes, Officer Morales testified to the following:

> I was responding to "person with a gun" call at that location. I met with a complainant later identified as Anthony DiDonato. And he explained to me that he was walking his dog on his leash. He saw a male in an empty lot. And he approached the male . . . And he was wondering why—he said, What are you doing there? And the male stated to him, get your dog away from me or I'll . . . blow its head off, pointing a firearm at the dog's direction. Officer Morales then proceeded to patrol the area and advised the police over radio that the male was possibly armed and dangerous.

Officer Morales testified that while he was not present for the actual stop of the male, he was present when Mr. DiDonato was taken to the location where the male was being held. Officer Morales testified that the location was 3909 Willow Street, only a couple of blocks from the scene of the complaint. Mr. DiDonato was taken to the location within ten (10) to fifteen (15) minutes after having originally spoken to Officer Morales. Officer Morales testified that when he got to the location holding the male he saw [Appellant], Omar Copeland. Officer Morales testified that at this location Mr. DiDonato positively identified [Appellant] as the male with the firearm.

On cross-examination, Officer Morales testified that he was the first officer on the scene to respond to the "person with a gun" call. Officer Morales testified that he could not recall whether he was solo at the time, but he believed he was. Officer Morales testified that the descriptive information he received was provided by Mr. DiDonato. Officer Morales testified that he then provided the descriptive information to the police radio. Officer Morales testified that [Appellant] was already in custody with other officers when he first saw [Appellant].

On direct examination, Officer Sean McAllister of the Philadelphia Police . . . testified that he was on duty in the area of 3900 Baring Street around 10:30 p.m. on September 3, 2013. Officer

McAllister testified that upon reaching that area[,] he saw [Appellant]. He described that in relation to 412 Saunders Avenue, 3900 Baring Street is just one block away. Officer McAllister testified that he was in the area to respond to a police radio call for a "person with a gun." He recalled that the flash over the radio described a black male wearing a blue hat, blue shirt, and white cargo shorts. Officer McAllister testified that once he arrived at the location, he saw [Appellant] wearing a blue hat, blue shirt, and white cargo shorts. Officer McAllister and his partner, both dressed in plain clothes and in an unmarked vehicle, then attempted to stop [Appellant] because [Appellant] matched the flash description. Officer McAllister explained that they exited the vehicle and identified themselves as police[,] and [Appellant] responded by fleeing. Officer McAllister testified that he and his partner were wearing outer vest covers which had their badges, names, and chains with a badge that identified them as police officers. Officer McAllister testified that [Appellant] fled down 400 Sloan Street and reached to the front of his waistband with a gun in his right hand outside of 413 Sloan Street. [Appellant] then crouched down and threw the gun in the sewer. Officer McAllister testified that [Appellant] proceeded north and made a right onto 900 Willow Street. [Appellant] attempted to enter the rear of that address, but Officer McAllister pulled [Appellant] out of the residence. Officer McAllister testified that [Appellant] stated he lived there and a struggle ensued that led them into the kitchen. Thirty (30) seconds later[,] Officer McAllister's backup arrived and [Appellant] was arrested. Officer McAllister testified that he had pursued [Appellant] fleeing by himself. He observed [Appellant] discard the gun as he fled, from about five (5) to ten (10) feet away. Officer McAllister testified that the gun was a silver revolver with a silver barrel and black handle. Officer McAllister testified that when [Appellant] discarded the gun it did not actually go into the sewer but instead made it only to the grate.

After [Appellant] was taken into custody, Officer McAllister returned within a minute to the area and found the gun between the grate and concrete. Officer McAllister testified that there were no other people in the area at that time, nor when he initially saw [Appellant] on the 3900 block of Baring Street.

On cross-examination, Officer McAllister testified that the outer vest he was wearing on top of plain clothes was black and it had a chain with his real badge on it. Officer McAllister testified that when he initially saw [Appellant] walking down the street he was

- 5 -

alone. Officer McAllister and his partner were driving northbound on 300 Sloan Street as [Appellant] was traveling southbound. Officer McAllister testified that [Appellant] then made a right on 3900 Baring Street. Officer McAllister and his partner turned left to go westbound as well and angled their vehicle to pull right up to the curb near [Appellant]. Officer McAllister then opened his door and got out of the vehicle. Officer McAllister testified that the positioning of the vehicle did not cut [Appellant] off but the vehicle was [not] legally parked.

Officer McAllister testified that he immediately identified himself as a police officer with his badge out to [Appellant] as he exited the vehicle. He testified that he was about five (5) feet away from [Appellant] at that moment and he then told [Appellant] to stop. Officer McAllister testified that [Appellant] turned and ran and that he followed after [Appellant]. Officer McAllister testified that he remained about five (5) feet behind [Appellant] during the entire chase until he caught [Appellant] at the rear of 3900 Willow Street. Officer McAllister testified that he saw [Appellant] toss the gun at the sewer during the chase, and he was able to identify it as a gun at the time. Officer McAllister also testified that [Appellant] wasn't doing anything illegal upon initial observation, prior to taking flight.

For purposes of the suppression hearing, counsel stipulated that if the Commonwealth were to call Detective Pearson to testify, he would testify that he responded to [Appellant]'s location and recovered the gun at the address of 413 Sloan Street. Detective Sloan would have further testified that the gun was placed on a Philadelphia property receipt and that it was a silver revolver. There was also a stipulation to the authenticity of the CAD report, which was marked as Commonwealth Exhibit 1 and moved into evidence. The court subsequently denied [Appellant]'s Motion to Suppress.

Trial Court Opinion, 3/31/17, at 2-5 (transcript citations omitted). We conclude that the trial court's opinion accurately recounts the evidence presented during the suppression hearing.

Appellant claims that the police lacked reasonable suspicion to conduct an investigatory stop, and that they coerced him into abandoning his gun. We

disagree. Police may briefly detain a person for an investigatory detention if they have an objectively reasonable suspicion that crime is afoot. **Commonwealth v. Holmes**, 14 A.3d 89, 96 (Pa. 2011). To demonstrate reasonable suspicion, an officer "must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of [his] experience." **Commonwealth v. Cook**, 735 A.2d 673, 677 (Pa. 1999). Courts "must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." **Holmes**, 14 A.3d at 96.

Here, Officer McAlister received a flash radio report that an African-American male had pulled a gun outside another man's house and threatened to shoot the man's dog. The man identified himself to Officer Morales, who called in the report. The fact that the information came from an identified victim instead of an anonymous source "imparted a high degree of reliability to the report."[3] **In re D.M.**, 727 A.2d 556, 558 (Pa. 1999). The incident took place just one to two blocks away from Officer McAlister's location. The suspect, who wore a blue hat, blue shirt, and white cargo shorts, was last

---

[3] Upon Appellant's apprehension, Officer Morales brought the victim to the scene, where he identified Appellant as the man who pulled a gun and threatened to shoot his dog. The fact that the victim was accompanied by a police officer to the scene in the immediate aftermath of the crime permits the reasonable inference that the victim "was known to, and was in the company of, the police prior to the stop." **Commonwealth v. Cruz**, 21 A.3d 1247, 1251 (Pa. Super. 2011).

seen walking westbound on Baring Street.  Moments after receiving the flash report, Officer McAllister saw Appellant—clad in the same distinctive blue-and-white outfit—walking westbound on Baring Street.  When the officer exited his vehicle and identified himself as a police officer, Appellant immediately took off running.  In short, Officer McAlister had reasonable suspicion to stop Appellant because Appellant matched the description in the flash report, which had a high degree of reliability, and Appellant fled when the officer identified himself.  *Commonwealth v. Washington*, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence"); *see also In re D.M.*, 727 A.2d at 558-59 (officer would have been derelict in his duty had he not stopped group of youths who matched in number the persons who had committed armed robbery a short distance away); *Commonwealth v. Jackson*, 678 A.2d 798, 801 (Pa. Super. 1996) (reasonable suspicion exists where suspect exactly matches "meager" description of armed robber, there is proximity in time or place to crime, and suspected crime is serious felony).

While fleeing lawful pursuit, Appellant pulled a silver revolver from his waistband and attempted to throw it into a gutter.  This created probable cause to arrest him, because police have probable cause to arrest any person for violation of the Uniform Firearms Act whom they observe in possession of a firearm on Philadelphia public streets.  *Commonwealth v. Taggart*, 997 A.2d 1189, 1196-97 (Pa. Super. 2010) ("[A]n officer's observation of an

individual carrying a handgun on public streets in the city of Philadelphia gives rise to probable cause for arrest under [18 Pa.C.S.A.] § 6108"). Further, once Appellant abandoned his gun, "the police were free to retrieve it and use it for evidentiary purposes." *Commonwealth v. Byrd*, 987 A.2d 786, 794 (Pa. Super. 2009). Probable cause also existed to arrest Appellant for resisting arrest when Officer McAlister caught up to him, causing them to crash through the back door of a house he tried to enter. *See Commonwealth v. Biagini*, 655 A.2d 492, 499 (Pa. 1995) ("we cannot state it any more clearly: there does not exist in Pennsylvania a right to resist arrest, under any circumstances").

Appellant claims that Officer McAlister coerced him into stopping by the manner in which he exited his patrol vehicle and by stating "do not move" as he approached Appellant. This argument fails because, as discussed above, Officer McAlister had reasonable suspicion to stop Appellant, which ripened into probable cause when Appellant removed his weapon from his waistband and discarded it.

For these reasons, the suppression court properly denied Appellant's motion to suppress.

In his second argument, Appellant contends that Officer Morales' testimony during the suppression hearing concerning the victim's report to him was hearsay. This testimony was not hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). "When a hearsay statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule." *Commonwealth v. Hood*, 872 A.2d 175, 178 (Pa. Super. 2005). Officer Morales announced the victim's report over police radio, and Officer McAlister reacted to the radio report by apprehending Appellant. Thus, the Commonwealth introduced Officer Morales' testimony to explain Officer McAlister's course of conduct. "An out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003); *see also Commonwealth v. Smith*, 378 A.2d 1015, 1017 (Pa. Super. 1977) (trooper's testimony in bookmaking prosecution concerning informant's statement that trooper could place bets by telephoning certain number was not hearsay, as it explained trooper's subsequent actions). Even if Officer Morales' testimony were hearsay, hearsay is admissible in a suppression hearing. *Commonwealth v. Bunch*, 477 A.2d 1372, 1376 (Pa. Super. 1984) (trial court properly admitted hearsay testimony at suppression hearing, "[s]ince a determination of probable cause may properly be based on hearsay"); *Commonwealth v. Seltzer*, 437 A.2d 988, 991 (Pa. Super. 1981). Thus, Appellant's second argument fails.

In his third and final argument, Appellant asserts that the trial court erred by denying his motion to dismiss all charges under Rule 600. We disagree.

Rule 600, Pennsylvania's speedy trial rule, "establishes a careful matrix protecting a Appellant's rights to be free from prolonged pretrial incarceration and to a speedy trial, while maintaining the Commonwealth's ability to seek confinement of dangerous individuals and those posing a risk of flight, and to bring its cases in an orderly fashion." *Commonwealth v. Dixon*, 907 A.2d 468, 473 (Pa. 2006). Rule 600 provides: "Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). "For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). In addition, the rule incorporates "the long line of cases that have construed" prior versions. Comment, Pa.R.Crim.P. 600. Excludable time under Rule 600 includes any period of delay caused by the unavailability of defendant or his attorney and any defense–requested continuances, as well as delays resulting from circumstances beyond the Commonwealth's control and despite its due diligence. *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (*en banc*). Excludable time also includes periods of judicial delay. *Commonwealth v. Mills*, 162 A.3d 323, 325 (Pa. 2017). "Accordingly, where a trial-ready prosecutor must wait several months due to a court

calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id.* On the other hand, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Id.* "Time during which no one is prepared for trial—or even possibly could be ready," is not "delay." *Id.* (in attempted murder case, 174 day delay between filing of complaint and status conference was chargeable against Commonwealth under Rule 600; at time of status conference, Commonwealth was not yet in position to provide complete discovery, assigned assistant district attorney had a planned vacation on the then-scheduled trial date two weeks later, and Commonwealth had not yet initiated DNA testing of genetic material from defendant).

We review a trial court's denial of a Rule 600 motion for an abuse of discretion. *Commonwealth v. Solano*, 906 A.2d 1180, 1186 (Pa. 2006). "Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party." *Commonwealth v. Selenski*, 994 A.2d 1083, 1088 (Pa. 2010).

The record reflects that Appellant was arrested on September 3, 2013 and charged with firearms offenses. A preliminary hearing was scheduled in the Philadelphia Municipal Court for September 24, 2013, but on that date, the Commonwealth obtained a continuance because a witness had not been subpoenaed. When the witness failed to appear at the next listing on October

15, 2013, the Commonwealth obtained a second continuance. On October 31, 2013, Appellant's preliminary hearing took place, and he was held for court on all charges. On December 11, 2013, Appellant rejected the Commonwealth's plea offer, and the court granted a continuance to December 27, 2013 for a bench trial.

On December 13, 2013, Appellant filed a motion to suppress the revolver he discarded at the scene of his arrest. On December 27, 2013, the scheduled trial date, the Honorable Christopher R. Wogan granted Appellant's request for a trial continuance to May 6, 2014, followed by an additional ten-day continuance to May 16, 2014, and ruled both continuances excludable for purposes of Rule 600.

On May 16, 2014, the suppression hearing took place, and the court denied the motion. On the same date, Appellant waived his right to a jury trial but requested a continuance to determine whether he would proceed to trial *pro se* or with new trial counsel. On May 29, 2014, the court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), and granted Appellant's request to represent himself. The next day, Appellant requested a jury trial and a continuance to prepare for trial. Judge Wogan granted the request, continued the case to February 25, 2015, and ruled the time excludable.

Between August 14, 2014 and February 12, 2015, Appellant filed nine motions.[4] On February 25, 2015, he requested another continuance to March 4, 2015. On that date, Judge Wogan granted another defense continuance, this time scheduling a motions hearing on December 10, 2015, and again ruling the time excludable. On June 29, 2015, Appellant filed another suppression motion. Following Judge Wogan's retirement in August 2015, the case was reassigned to the Honorable J. Scott O'Keefe. Appellant then filed a motion to amend his petition for writ of habeas corpus and a motion to dismiss pursuant to Rule 600 on November 23 and 30, 2015, respectively.

On December 10, 2015, Appellant's trial was continued one day because he was not brought down from prison. The next day, Judge O'Keefe heard argument on Appellant's Rule 600 motion, during which the Commonwealth acknowledged it caused 58 days of delay between September 3, 2013 and October 31, 2013. Because Judge Wogan had already ruled that the remaining periods of delay were attributable to Appellant and thus excludable under Rule 600, Judge O'Keefe concluded that he lacked "the authority to overrule a judge of the same jurisdiction" and denied all of Appellant's pending motions. The

---

[4] Appellant filed a motion to proceed *in forma pauperis* (August 14, 2014); motions to quash and dismiss the case (October 31, 2014); a petition for a writ of habeas corpus (January 16, 2015); a supplemental motion to dismiss and a petition for a writ of prohibition (January 23, 2015); motions to suppress both physical and identification evidence (February 6, 2015); and a motion *in limine* (February 12, 2015).

Commonwealth then requested the earliest possible trial date, and the court continued trial to March 21, 2016.

On March 21, 2016, due to another trial in the same courtroom, Judge O'Keefe continued trial for one week. On March 28, 2016, Appellant filed a second Rule 600 motion, and his case was reassigned to the Honorable Sierra Thomas Street, who ordered a brief continuance to April 4, 2016. On that date, when Appellant was not brought down from prison, trial was continued to April 5, 2016. Voir dire commenced on April 5, 2016, and presentation of evidence began on April 7, 2016.

Judge Street reasoned in her Rule 1925(a) opinion that the Commonwealth was responsible for the 58 days of delay between September 3, 2013 and October 31, 2013. The Commonwealth agrees that it caused this delay. Judge Street also held that the Commonwealth was responsible for the 288-day delay between February 25, 2015 and December 10, 2015:

> [Appellant] arrived for court on February 25th anticipating the commencement of the jury trial he had requested back at the end of May in 2014. However, [Appellant] encountered a mistaken docket entry by Courtroom Operations for a waiver trial. Unable to accommodate [Appellant]'s (now second) request for a jury trial on that date, the court continued the case to March 4, 2015. On that date, the docket reflects that the volume of motions submitted by the *pro se* [Appellant] were "just given to Judge Wogan." This resulted in the court scheduling a Motions Hearing on December 10, 2015, amounting to two hundred and eighty-eight (288) days that [Appellant] was effectively in judicial limbo. Consider that by February 25th, [Appellant] would have had nearly nine months since his last court date, the . . . requirement for the Commonwealth to make an effort to transfer the case to an available judge certainly seems applicable. The docket reflects no such effort. For that reason, the Commonwealth failed to exercise

due diligence on the February 25th court date and the subsequent two hundred and eighty-eight (288) days are attributable to the Commonwealth.

Trial Court Opinion, 3/31/17, at 20.  Judge Street held that all other delays were not chargeable to the Commonwealth, and that the total number of days attributable to the Commonwealth, 346 days, "fell within the permissible bounds of Rule 600(A)." *Id.* at 21.

We agree with Judge Street that the 58 days between September 3, 2013 and October 31, 2013 is attributable to the Commonwealth.  We do not agree, however, that the delay between February 25, 2015 to December 10, 2015 is attributable to the Commonwealth.  This was a "judicial delay" caused by the court's administrative errors in (1) scheduling a non-jury trial for February 25, 2015 instead of a jury trial, and (2) failing to give Appellant's litany of motions to Judge Wogan until March 4, 2015.  Unlike **Mills**, nothing in this record indicates that the Commonwealth was unprepared, sought continuances during this time period, or otherwise should bear the blame for the court's internal errors.

Finally, we agree with Judge Street that none of the other delays in this case are chargeable to the Commonwealth.  The other delays were the product of Appellant's motion to suppress (December 2013—May 2014), Appellant's demand to represent himself in a jury trial (May 2014—February 2015) and the court's heavy caseload (December 2015—April 2016).

For these reasons, the total delay chargeable to the Commonwealth was far less than 365 days, well within Rule 600's bounds. Appellant's Rule 600 argument is devoid of merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/18