J-A12008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SHAUN JACKSON, | |
| Appellee | No. 1678 EDA 2015 |

Appeal from the Order Entered May 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012272-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:**FILED SEPTEMBER 16, 2016**

I respectfully disagree with the Majority's conclusion the suppression court did not err in granting Appellee's suppression motion.  Because I believe the Commonwealth has met its burden of persuasion that the suppression court's decision constituted a legal error, I dissent.

The record reveals that Officers Smith and Dill were acting upon information received directly from the Victim that a bearded, African-American male who was approximately twenty-eight years old and wearing a black hoodie and black pants had just broken into a car at 1127 East Tioga Street and was heading eastbound.  Within five minutes, the officers encountered Appellee who matched the description the Victim had provided to police walking alone in the 3400 block of Kensington Avenue which

*Former Justice specially assigned to the Superior Court.

location was within a block of 1127 East Tioga Street and consistent with the direction of travel in which the Victim had indicated the perpetrator was proceeding. Officer Smith testified that when he made contact with Appellee, Officer Smith "just casually said, "Hey, can I, you know, speak to you a minute?" And [Appellee] applied [sic] and stopped." N.T., 5/8/15, at 14. Officer Smith explained to Appellee why he was being detained, asked him for identification, and directly questioned whether Appellee "had anything on his person that [Officer Smith] needed to be concerned about."

At that time, Appellee indicated he was armed and informed Officers Smith and Dill a firearm was in his right, rear pants pocket. N.T., 5/8/15, at 14-15. Shortly thereafter, the Victim indicated Appellee was not the person involved in the vehicle theft, and Appellee was placed under arrest for firearms violations. No other individuals present in the vicinity matched the flash description broadcast over police radio. *Id*. at 19.

Thus, the officers possessed at least the minimum level of objective justification necessary to create the reasonable suspicion to justify a stop of Appellee as part of their investigation of the theft of the Victim's vehicle. It is axiomatic that:

> [a]n officer who lacks the level of information required for probable cause to arrest need not "simply shrug his shoulders and allow a crime to occur or a criminal to escape." ***Adams v. Williams***, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Where an officer reasonably suspects that criminal activity is afoot, the officer may temporarily freeze the *status quo* by preventing the suspect from leaving the scene in order to ascertain his identity and gather additional information. ***Terry v.***

> ***Ohio****,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may be armed and dangerous. ***Id****.* The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. ***United States v. Cortez****,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). There is no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion to which the search or seizure entails. ***Terry****,* 392 U.S. at 21, 88 S.Ct. 1868. Police are generally justified in stopping an individual when relying on information transmitted by a valid police bulletin. ***United States v. Hensley****,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

***In re D.M.****,* 556 Pa. 160, 164, 727 A.2d 556, 557–58 (1999).

The Majority agrees with the suppression court's acknowledgement that Appellee's race, clothing and direction of travel matched the general description of the thief that the Victim had provided police and which was transmitted subsequently *via* police radio. Notwithstanding, the Majority stresses that the Victim's description lacked "particularly unique" characteristics, such as skin tone, physical markings, height or weight, and that Officer Smith never testified as to whether Appellee had a beard, as the Victim had indicated. However, the absence of unique characteristics in the flash description is of no moment, for it is possible that Appellee neither had any or, if he did, that his dark clothing concealed them. Requiring such detail would severely hamper law enforcement in the performance of their duties in cases such as this. In addition, officers initially observed Appellee

from behind wearing a black hooded jacket, black sweatpants and black sneakers and upon this basis decided to make contact with him.

In ***Commonwealth v. Hawkins***, 547 Pa. 652, 692 A.2d 1068 (1997) officers stopped the appellant based upon an anonymous caller's tip, and the Majority relies upon that case for its discussion of the relationship between an accurate description of a suspect and evidence of criminal conduct in the within matter. Here, it is the Victim who made the report, not an anonymous source.[1] Our Supreme Court has stressed that a report from the crime victim imparts a "a high degree of reliability to the report. ***In re D.M.***, 556 Pa. at 165, 727 A.2d at 558. In addition, this Court has found that knowing the identity of the informant sufficiently heightens the reliability of the information, for where the informant's identity is known, he or she risks prosecution for giving false information to police. See ***Commonwealth v. Cruz***, 21 A.3d 1247, 1251 (Pa.Super. 2011) ***citing Commonwealth v. Altadonna***, 817 A.2d 1145, 1152 (Pa.Super. 2003); ***Commonwealth v. Hayward***, 756 A.2d 23, 34 (Pa.Super. 2000).

Moreover, the Majority fails to recognize the time constraints the police officers were under. While the Majority recognizes there was an assertion there was an attempted break-in to the car, by the time the police

---

[1] The suppression court compounded its error by its confusion over whether the source was anonymous. The record is clear the source was never anonymous.

- 4 -

officers would have tried to verify further the crime, the perpetrator could have been long gone.

Clearly, the record shows there was an assertion of a crime, a physical description reasonably identifying Appellant, and a stop close in time and place to the crime location. Therefore, the police officers had reasonable suspicion to stop Appellant.

Moreover, Appellee's compliance with the officers' request for identification and the lack of evasive behavior on his part are not determinative of whether police possessed reasonable suspicion briefly to detain Appellee at the outset. Indeed, this Court has found that the detention and limited investigation of a suspect is not rendered illegal even though his activity is consistent with innocent behavior. **See Commonwealth v. White**, 516 A.2d 1211 (Pa.Super. 1986). Rather, this Court views the circumstances through the eyes of a trained officer, not an ordinary citizen. **Commonwealth v. Kemp**, 961 A.2d 1247, 1255 (Pa.Super. 2008) (*en banc*).

Appellee's behavior must be considered along with the totality of the circumstances, including the fact that he is a black male who was alone wearing a black hooded jacket and black sweatpants and traveling eastbound within a block of the reported car theft when Officers Smith and Dill spotted him moments later. Relying upon the radio dispatch based upon information from the victim, the officers did not simply stop Appellee on a

mere hunch; the fact that they had not verified prior thereto whether a break-in had occurred does not detract from their reasonable suspicion that criminal activity may be afoot.

As I would find the suppression court improperly applied the law to the facts herein and its resultant legal conclusions were erroneous, I would reverse and remand for trial.