J-S66011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AMIR FEREBEE | : | |
| | : | |
| Appellant | : | No. 110 EDA 2018 |

Appeal from the Judgment of Sentence November 17, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0011695-2016

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 21, 2018**

Appellant, Amir Ferebee, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his stipulated bench trial convictions for firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possession of a small amount of marijuana.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On December 7, 2016, at 9:37 p.m., Officer Blackburn, a 16½-year police veteran, was on duty with his partner when they received a dispatch regarding an armed robbery at 54th and Spruce Streets in Philadelphia, known as a high crime area.  The flash described the suspects as two black, tall, thin males,

_____

[1] 18 Pa.C.S.A. § 6106(a)(1); 6108; 35 P.S. § 780-113(a)(31).

around 18 to 20 years old, wearing all black; one male wearing a black and white striped beanie hat. Less than 15 minutes later, Officer Blackburn observed two males matching the flash description at the intersection of 58th and Spruce Streets, approximately four blocks from the crime scene. Officer Blackburn stopped the men, one of whom was Appellant, and explained his reasons for the stop. Appellant was wearing black sneakers, black pants, a black jacket, a black hooded sweatshirt, and a black, off-white, grey/green camouflage hat with a wavy pattern. The other male was also wearing all black. Officer Blackburn then conducted a pat-down of Appellant, during which the officer felt what appeared to be a gun in Appellant's waistband. Appellant stated: "It's a pellet gun." The officer removed the weapon, which contained six live rounds. The officer also recovered numerous packets of a green, leafy substance on Appellant's person, which the officer suspected was marijuana.

The Commonwealth charged Appellant with firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and possession of a small amount of marijuana. On April 5, 2017, Appellant filed a motion to suppress. The court held a suppression hearing on October 16, 2017, and denied relief. Appellant proceeded directly to a stipulated bench trial, where the court convicted Appellant of all charges. The court sentenced Appellant on November 17, 2017, to time served to six months' imprisonment, with immediate parole, plus 54 months' probation for

the conviction of firearms not to be carried without a license, and a concurrent term of one year of probation for the conviction of carrying firearms on public streets or public property in Philadelphia. The court imposed no further penalty for the conviction of possession of a small amount of marijuana.

Appellant timely filed a post-sentence motion on November 27, 2017. Following a hearing on December 12, 2017, the court denied post-sentence relief. Appellant timely filed a notice of appeal on January 2, 2018. The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

Appellant raises the following issue for our review:

> DID NOT THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS WHERE POLICE LACKED REASONABLE SUSPICION TO BELIEVE APPELLANT HAD ENGAGED IN CRIMINAL CONDUCT AT THE TIME THAT POLICE STOPPED HIM?

(Appellant's Brief at 3).

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Williams*, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal

conclusions based upon the facts.

*Id.* at 27.

Appellant argues Officer Blackburn stopped him based on an anonymous tip lacking sufficient corroboration. Appellant asserts Officer Blackburn received the flash description from another officer, and Officer Blackburn could not be certain whether the complainant was present with the officer who gave the flash description at the time it went out over the radio. Appellant insists the flash was vague, where it described the suspects as tall, thin, black males wearing all black. Appellant stresses that the hat described on the radio did not exactly match the hat Appellant was wearing at the time of the stop. Appellant emphasizes that neither he nor his friend were acting suspicious or evasive at the time Officer Blackburn stopped them. Appellant maintains he was simply walking down the street at the time of the stop, and Officer Blackburn did not observe him carrying a weapon. Appellant contends Officer Blackburn could not stop him, even in a high-crime area, based solely on a generic description supplied by an anonymous tip. Appellant concludes Officer Blackburn lacked reasonable suspicion to conduct an investigatory detention of Appellant, Appellant's statement and the firearm and drugs recovered from his person are "fruit of the poisonous tree," and this Court must reverse the order denying his suppression motion and remand for further proceedings. We disagree.

Contacts between the police and citizenry fall within three general

classifications:

> The first level of interaction is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> *    *    *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of

an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Cottman*, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting *Commonwealth v. Beasley*, 761 A.2d 621, 625 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)).

> In making this determination, we must give due weight…to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted). "[W]hether the defendant was located in a high crime area…supports the existence of reasonable suspicion." *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (*en banc*), *appeal denied*, 605 Pa. 694, 990 A.2d 727 (2010) (internal citations omitted). "The officer may also conduct a quick frisk for weapons if he reasonably fears that the person with whom he is dealing may be armed and dangerous." *In re D.M.*, 556 Pa. 160, 164, 727 A.2d 556, 557 (1999).

"While a tip can be a factor [in determining whether reasonable suspicion existed], an anonymous tip alone is insufficient as a basis for reasonable suspicion." *Commonwealth v. Leonard*, 951 A.2d 393, 397

(Pa.Super. 2008). "Because an anonymous tip typically carries a low degree of reliability, more information is usually required before investigating officers develop the reasonable suspicion needed to support an investigatory stop of a suspect." *Commonwealth v. Fell*, 901 A.2d 542, 545 (Pa.Super. 2006). Conversely, an ordinary citizen who is an eyewitness to a crime is presumed trustworthy. *Commonwealth v. Lyons*, 622 Pa. 91, 79 A.3d 1053 (2013), *cert. denied*, 572 U.S. 1048, 134 S.Ct. 1792, 188 L.Ed.2d 761 (2014).

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

*Commonwealth v. Barber*, 889 A.2d 587, 593-94 (Pa.Super. 2005) (quoting *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 964 (Pa.Super 1999) (*en banc*), *appeal denied*, 563 Pa. 659, 759 A.2d 383 (2000)). *See also In re D.M., supra* (holding officer had reasonable suspicion to stop appellant after officer received radio information of gunpoint robbery involving four or five black males, appellant and his companions matched number and race of suspects broadcast in report, were only individuals in vicinity of robbery, and officer stopped them in close proximity to crime scene shortly after crime; fact that flash information gave description of suspects supplied by crime victim and not from anonymous source imparted high degree of reliability to report;

further, officer's pat-down of appellant and his companions was proper where radio call indicated suspects might be armed and dangerous).

Instantly, the trial court addressed Appellant's suppression claim at the conclusion of the suppression hearing, as follows:

> The officers are on patrol specifically because it's a high crime area and they're in the area, because of what goes on, and the officer testified that he was brought out from his own district for overtime due to the type of patrol and that's why he was in the area.
>
> He gets a call, a radio call. The other officers, it seemed apparent to me through the testimony that the officers were with the complaining witness and the description of the defendants were broadcast over the radio.
>
> Defense brings up great weight in the description and the one item that seems to have been in dispute was the hat.
>
> There [were] 13, maybe 14 minutes between the radio call and the officer's observation. The radio call was two black males, thin, the officer recalled tall, walking together, shotgun robbery, all black clothes, and within minutes of that call, within less than a five-block radius, where that call was from, they observed [Appellant] and another black male wearing mostly all black. He testified—and the one defendant here [Appellant] had a cap on his head. Although it wasn't an exact match as was described, it did have the colors in the cap.
>
> The officer testified that rather than go against traffic and to close a 25-yard gap, he went around and as soon as [Appellant] and the other person who was with him, who both matched the description[,] saw him, they attempted to go inside a Chinese Store and then the officer grabbed them.
>
> &ast; &ast; &ast;
>
> And given the fact that it was so close in time, [Appellant] and the other person with him, so closely matched the description, I didn't think it was overly unreasonable for the

- 8 -

officers to do what they did and to stop this gentleman and given it was a gunpoint robbery, frisked him for their own safety and then they found the gun. So for those reasons I'm going to deny the motion to suppress.

\* \* \*

[Even if the suspects were not trying to evade police when they walked into the Chinese store,] I mean, it's not unreasonable so close in time for such a close match, the description of the offenders. And listen, shotguns come in all shapes and sizes; they're cut, they're long, they're big, they're short, I mean, I've seen dozens of them. They're all shapes and sizes. They're not that hard to conceal on your person. So you have two officers coming…upon what they believed may be possible armed robbers and based on the testimony of the officer, I don't think they acted unreasonabl[y,] given the facts and circumstances and so for those reasons I will deny the motion to suppress.

(N.T. Suppression Hearing, 10/16/17, at 42-46). The record supports the court's decision. *See Williams, supra*.

Initially, the record makes clear Officer Blackburn did not stop Appellant and his companion based on an anonymous tip. Rather, the officer stopped Appellant based on a flash description provided by another officer who had responded to the crime scene and relayed the complainant's description of the suspects. The complainant had reported an armed robbery with use of a shotgun and described the suspects as two black, tall, thin males, around 18 to 20 years old, wearing all black; one male wearing a black and white striped beanie hat. Thus, the information Officer Blackburn possessed was reliable and trustworthy. *See Lyons, supra*; *In re D.M., supra*; *Barber, supra*. Additionally, Officer Blackburn stopped Appellant and his companion less than

15 minutes after receiving the flash information and approximately four blocks from the crime scene, in a high crime area. Appellant and his companion matched the physical description of the suspects and were both wearing all black. Further, Appellant was wearing a hat similar in description to one perpetrator's hat. Based on the totality of the circumstances, including the officer's 16½ years of experience on the police force, Officer Blackburn had reasonable suspicion to stop Appellant and to conduct a pat-down for officer safety. *See In re D.M., supra*; *Foglia, supra*; *Young, supra*; *Cottman, supra*. Therefore, the court properly denied Appellant's suppression motion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/18

- 10 -